FILED
SEP 22 2008
[Clerk signature]

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MARK VOTER, ) | CIV. 06-4129-KES |
| ) | |
| Plaintiff, ) | |
| ) | ORDER DENYING |
| vs. ) | PLAINTIFF'S MOTION TO |
| ) | PRODUCE |
| AVERA BROOKINGS MEDICAL ) | |
| CLINIC, f/k/a Brookings Medical ) | |
| Clinic, ) | |
| ) | |
| Defendant. ) | |

Plaintiff moves for production of a report filed in his clinic file. Defendant opposes the motion. For the reasons discussed below, the court denies plaintiff's motion to produce.

**DISCUSSION**

**I.    Timeliness of Plaintiff's Motion to Produce**

The document filed by plaintiff is entitled a "motion for production of memo to file" and requests defendant to provide plaintiff with a report filed in his clinic file. Plaintiff explains that the memo was in the clinic file, which was provided to plaintiff's counsel at the deposition of Dr. John Ramsay. Docket 24. Plaintiff maintains that he is entitled to copies of anything Dr. Ramsay reviewed prior to the taking of his deposition. Docket 25. Plaintiff's motion for production of memo to file is the same as a motion to compel production of documents because plaintiff is requesting that the court force defendant to

respond to the plaintiff's request for production of documents, namely the memo to file.

Federal Rule of Civil Procedure 37 does not specify a time limit for filing a motion to compel. See Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 396 (N.D. Tex. 2006) (noting that Federal Rule of Civil Procedure 37 provides no deadline for the filing of motions to compel discovery). Nonetheless, "[i]f the moving party has unduly delayed, the court may conclude that the motion is untimely." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2285 (2d ed. 1994). Thus, courts have looked to the deadline for completion of discovery when determining the timeliness of a motion to compel.

Generally, absent a specific directive in the scheduling order, motions to compel discovery filed prior to the discovery deadline have been held timely. But motions to compel filed after the discovery deadline have routinely been found to be untimely. See Continental Industries, Inc. v. Integrated Logistics Solutions, 211 F.R.D. 442, 444 (N.D. Okla. 2002) (determining that a motion to compel production of documents, which was filed six months after the discovery deadline and only three weeks before trial, was untimely, and resulted in a waiver of any discovery violations through unreasonable delay). See also Packman v. Chicago Tribune Co., 267 F.3d 628, 647 (7th Cir. 2001) (finding the district court did not abuse its discretion in denying a motion to compel discovery filed after discovery closed and defendants had filed their

summary judgment motion); Ginett v. Federal Express Corp., 1998 WL 777998, at *5 (6th Cir. Oct. 21, 1998) (finding the district court did not abuse its discretion when it denied a motion to compel filed two months after the discovery deadline, because the plaintiff knew of the document at issue long before the discovery deadline); James v. United States, 2003 WL 22149524, at *6 (S.D.N.Y. Sept. 17, 2003) (denying motion to compel discovery as untimely where fact discovery closed approximately six months before the motion was filed and movant offered no justification for tardiness); and Suntrust Bank v. Blue Water Fiber, L.P., 210 F.R.D. 196, 200-202 (E. D. Mich. 2002) (determining plaintiff's motion to compel should be denied because the motion was filed approximately two months after the discovery cut-off and although plaintiff knew of the document at issue long before the discovery deadline, plaintiff failed to file a motion at that time).

Here, the court issued an order amending scheduling deadlines, which ordered the parties to complete any and all discovery by May 1, 2008. Docket 15. The court also scheduled the trial to commence on September 30, 2008. Docket 18. Plaintiff filed his motion, which requested the court to order defendant to produce a particular memo, on September 8, 2008. Docket 24. The motion was filed over four months after discovery had been completed and approximately three weeks before trial. Further, plaintiff knew of the requested memo long before the discovery deadline. Dr. Ramsay was deposed on February 8, 2007, which is when plaintiff learned of the memo's existence, and

the discovery deadline was May 1, 2008. Docket 24-2; Docket 15. Moreover, plaintiff has offered no justification for his tardiness in filing his motion. Based upon the foregoing discussion, the court finds that plaintiff's motion is untimely.

## II.    Privilege

Even if plaintiff's motion is timely, after reviewing the memo, in camera, the court finds that the document is protected by attorney-client privilege and that the privilege has not been waived.[1] "In diversity actions, state law determines the existence and scope of attorney-client privilege." Gray v. Bicknell, 86 F.3d 1472, 1482 (8th Cir. 1996). Because this is a diversity action, South Dakota law governs whether the contents of Dr. Ramsay's memo are privileged and whether that privilege has been waived.

Under South Dakota law, a client may assert the attorney-client privilege in order to prevent disclosure of confidential communications made between the client and the client's attorney for the purpose of facilitating the rendition of professional legal services. See SDCL 19-13-3. "[A] lawyer-client privilege may be waived if the client voluntarily or through his attorney discloses the contents of the communication or advice to someone outside that relationship." State v. Catch the Bear, 352 N.W.2d 640, 647 (S.D. 1984).

---

[1] The court received the memo for in camera review at the pretrial conference on September 15, 2008. Docket 32. The memo is sealed and attached to this opinion.

4

### A.   Attorney-Client Communication

The memo is an attorney-client communication and, therefore, is privileged. The burden of establishing that a particular communication is protected by the attorney-client privilege rests with the party asserting the privilege. See State v. Rickabaugh, 361 N.W.2d 623, 624 (S.D. 1985). Under South Dakota law, in order to invoke the attorney-client privilege, defendant, the party asserting the attorney-client privilege, must show (1) that there was a client; (2) that there was a confidential communication; (3) that the communication was made for the purpose of facilitating rendition of professional legal services to the client; and (4) that a communication was made between an attorney and his client. See Rickabaugh, 361 N.W.2d at 624-25.

Here, all four elements are satisfied. Dr. Ramsay, acting on behalf of the Avera Brookings Medical Clinic, the client, wrote a memo intended for defendant's attorney. The memo was created on August 17, 2006, which was after the July 27, 2006, complaint had been filed and before the August 21, 2006, answer was filed. The memo states that it contains Dr. Ramsay's "opinions, analysis and response to the notification of suit being brought against the Avera Brookings Medical Clinic by Mark Voter subsequent to his on the job injury of 7/27/04." Docket 29, at 2. Based upon these facts, the court finds that the memo is protected by attorney-client privilege.

### B. Waiver of Privilege

The court must now decide whether the inadvertent disclosure of the memo to plaintiff's counsel waives the attorney-client privilege with respect to that document. The burden of establishing waiver of the attorney-client privilege is on the party asserting the waiver. Catch the Bear, 352 N.W.2d at 647. Thus, plaintiff has the burden of demonstrating that the lawyer client privilege has been waived. Courts have taken three different positions with respect to the effect of inadvertent disclosure of privileged documents. See Pavlik v. Cargill, Inc., 9 F.3d 710, 713 (8th Cir. 1993) (recognizing the three different approaches to inadvertent disclosure of privileged material).

The "strict" approach is based on the premise that once confidentiality is lost, it can never be restored. The Federal Circuit and the First Circuit are the strongest proponents of the strict approach, and in those circuits, any inadvertent disclosure of a privileged document constitutes a waiver of privilege. See In Re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989) (finding that the inadvertent disclosure constituted a waiver) and Ares-Serono, Inc. v. Organon Int'l B.V., 160 F.R.D. 1, 4 (D. Mass. 1994) (stating that disclosure of documents subject to an attorney-client privilege operates as a waiver to any documents disclosed by inadvertence).

Under the "lenient" approach, courts hold that inadvertent disclosure without gross negligence never waives the privilege because waiver requires an intentional and knowing relinquishment of the privilege. Further, because the

privilege is that of the client, the lawyer's actions absent some egregious circumstances should not be able to constitute the client's waiver. See Gray, 86 F.3d at 1483 (determining that under Missouri law, when inadvertence resulted in disclosure, no wavier occurred) and Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y 1985) (determining that because the disclosure of documents that were entitled to the attorney-client privilege was inadvertent and a mistake, rather than a knowing waiver, the court would not order that the documents be produced).

Finally, under the "balancing test" approach, which utilizes the Hydroflow test, the court makes a case-by-case determination of whether the conduct is excusable so that it does not entail a necessary waiver. Several factors are considered that generally revolve on the degree of negligence involved in the disclosure and the amount of diligence in seeking to recoup privilege. See Hydraflow, Inc. v. Enidine, Inc., 145 F.R.D. 626, 637 (W.D.N.Y. 1993) (applying five factors to determine whether inadvertent disclosure resulted in mandatory disclosure).

The South Dakota Supreme Court has not specifically addressed how an inadvertent disclosure affects privileged material. But the court believes that the South Dakota state courts would adopt the Hydraflow approach, because this approach is the middle-of-the-road approach and it discourages carelessness while allowing flexibility. Further, this court has previously applied the Hydraflow approach in federal question cases. See Pucket v. Hot

Springs District No. 23-2, 239 F.R.D. 572, 586-87 (D.S.D. 2006) (applying the Hydraflow factors to the inadvertent disclosure of a privileged document in a federal question case) and Carda v. E.H. Oftedal & Sons, Inc., Civ. 04-5036, Docket 92, at 3-8 (adopting and applying the Hydraflow factors to the accidental disclosure of a privileged document in a federal question case).

Therefore, here, the court will apply the Hydraflow factors, which include (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in light of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to remedy the problem, and (5) whether justice is served by relieving the party of its error. Based upon the five Hydraflow factors, the court finds that the inadvertent disclosure of the memo did not waive the attorney-client privilege.

As to the first factor, there is nothing in the record that indicates that defendant's counsel did not take reasonable precautions to prevent inadvertent disclosures. A clerical person at the Brookings Medical Center inadvertently filed a copy of Dr. Ramsay's memo in plaintiff's clinical chart. In fact, defense counsel was unaware of the mistaken disclosure until Dr. Ramsay's deposition. Thus, this factor weighs in favor of defendant. As to the second factor, the inadvertently disclosed document in this case was Dr. Ramsay's memo and, therefore, the number of inadvertent disclosures is limited to one. This factor also weighs in favor of defendant. As to the third factor, the disclosure was not

extensive. The memo written by Dr. Ramsay was for defense counsel to use in formulating an answer to the complaint and consisted of Dr. Ramsay's opinions, analysis, and response to the suit brought by plaintiff. As such, this factor weighs in favor of defendant. As to the fourth factor, immediate and prompt actions were taken during Dr. Ramsay's deposition to notify plaintiff's counsel that the information contained in Dr. Ramsay's memo was protected under the attorney-client privilege. As soon as plaintiff's counsel mentioned the August 17, 2006, memo, defendant's counsel responded that the memo was not meant to be part of the medical chart and that it was an inadvertent disclosure. Docket 24-2. This factor favors defendant. As to the fifth and final factor, the interests of justice weigh in favor of determining that defendant did not waive the attorney-client privilege. Nothing in the record suggests that allowing the privilege to remain attached to the communication would prevent the resolution of issues in this case or result in prejudice to plaintiff.

Based on the foregoing, it is hereby

ORDERED that plaintiff's motion to produce (Docket 24) is denied.

Dated September 22, 2008.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
CHIEF JUDGE